Opinion issued December 11, 2008










In The

Court of Appeals

For The

First District of Texas






NO. 01-07-00450-CR






DAVOND LEE ROBERTSON, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 176th District Court

Harris County, Texas

Trial Court Cause No. 1070266






MEMORANDUM OPINION


 A jury convicted appellant, Davond Lee Robertson, of aggravated robbery and
assessed punishment at twenty-five years in prison. See Tex. Penal Code Ann.
§ 29.03(a)(2) (Vernon 2003). In one issue, appellant contends that he received
ineffective assistance of counsel. We affirm.

Background

 Around 9:30 p.m. on May 23, 2006, appellant and two other men went to a
Hollywood Video store in Houston, Texas. Appellant and another man entered the
store and a third man stood near the door as a lookout. Ivory Franklin, the assistant
store manager, was at the cash register near the front of the store. One of the robbers
aimed a shotgun at Franklin and demanded money, which Franklin gave him.

 Appellant went to the "Game Crazy" area in the back of the store. It was
closed for the night and separated from the rest of the store by a locked gate. Lionel
Turner, the store manager, was behind the gate counting money and finalizing his
bookkeeping. Appellant, who wore white, baggy clothes and a blue bandana
covering his face, shook the gate and demanded money while brandishing a small,
black gun, which Turner later said appeared "shiny" under the glare of the store
lights. Appellant then fired a shot that hit the wall about three feet above Turner's
head, as Turner dived under a desk. Appellant and the two other men fled the scene
in a brown Chevrolet Blazer 

 Houston Police Department officers who responded to the robbery recovered
a spent shell casing just outside the Game Crazy gate and saw the hole where the
bullet lodged in the wall. They obtained descriptions of the robbers as African-American men, about 17 years old, wearing baggy clothing. Neither Turner nor
Franklin could recall if the robbers' faces were covered or estimate their heights or
weights. 

 The next day, around 5:30 p.m., Houston Police Department Officer
G. Saucedo saw appellant, driving a brown Chevrolet Blazer, change lanes and turn
left without signaling. They were about six blocks from the video store that had been
the scene of the robbery the night before. Officer Saucedo initiated a traffic stop. 
Appellant drove about 200-300 yards before he pulled over. When appellant
stopped, the passenger got out of the vehicle and ran away; the passenger was later
arrested. Officer Saucedo arrested appellant, searched the vehicle, and found a small,
black handgun in the back pocket of the front passenger seat and a black or blue
bandana on the backseat.

 Officer C. Guidry, a robbery investigator, arrived at the scene of the traffic stop
and began preparing a live lineup in connection with the previous night's robbery.
The live lineup included appellant, the passenger who had fled the traffic stop, and
four other African-American men of similar size and build, all wearing street clothes. 
The lineup was videotaped. Turner identified appellant from the live lineup; Franklin
identified appellant from the videotape based on his voice. Both Franklin and Turner
identified appellant again in court.

 Appellant testified at trial. He denied participating in the robbery, saying that
he was at home babysitting his girlfriend's younger siblings at the time of the
robbery. Appellant testified that he had loaned the brown Chevrolet Blazer to a
friend on the night of the robbery. Appellant said this friend was the passenger who
had fled the next day when appellant was stopped for a traffic violation.

 Appellant's first, court-appointed attorney filed a pretrial motion to suppress
the lineup identifications and any other evidence seized from the vehicle, arguing that
it had been obtained as a result of an illegal, warrantless search and seizure. 
Appellant hired another attorney, who did not pursue the motion to suppress. At trial,
appellant's attorney vigorously cross-examined each of the State's witnesses. In
closing, he argued that this was a case of mistaken identity.

 Appellant's sole appellate issue is that he received ineffective assistance of
counsel because his attorney failed to move to suppress the evidence gleaned from
his arrest, specifically the gun and the identifications by Turner and Franklin. 

Ineffective Assistance of Counsel

 The standard of review for evaluating claims of ineffective assistance of
counsel is set forth in Strickland v. Washington, 466 U.S. 668, 687-96, 104 S. Ct.
2052, 2064-69 (1984) and Bone v. State, 77 S.W.3d 828, 833 (Tex. Crim. App.
2002). To prevail on his claims, appellant must first show that his counsel's
performance was deficient. Strickland, 466 U.S. at 687, 104 S. Ct. at 2064; Bone, 77
S.W.3d at 833. "Specifically, appellant must prove, by a preponderance of the
evidence, that his counsel's representation fell below the objective standard of
professional norms." Bone, 77 S.W.3d at 833. "Second, appellant must show that this
deficient performance prejudiced his defense." Id. This means that appellant "must
show a reasonable probability that, but for his counsel's unprofessional errors, the
result of the proceeding would have been different." Id. (quoting Mitchell v. State,
168 S.W.3d 640, 642 (Tex. Crim. App. 2002)). A "reasonable probability" is one
"sufficient to undermine confidence in the outcome." Bone, 77 S.W.3d at 833. An
appellant must prove that a motion to suppress would have been granted in order to
satisfy Strickland. Jackson v. State, 973 S.W.2d 954, 957 (Tex. Crim. App. 1998). 
To do this, he must have produced evidence that defeated the presumption of proper
police conduct. Id.

 A police officer may stop and arrest a driver for a traffic violation and may
search the person and the car incident to the arrest. Dogay v. State, 101 S.W.3d 614,
618 (Tex. App.--Houston [1st Dist.] 2003, no pet.) (holding that officers'
observations of speeding and failing to signal lane changes provided probable cause
for arrest); Tex. Transp. Code Ann. § 543.001 (Vernon 1999) ("Any peace officer
may arrest without warrant a person found committing a violation of [the Rules of the
Road]."); Tex. Code Crim. Proc. Ann. art 14.01(b) (Vernon 2005) ("A peace officer
may arrest an offender without a warrant for any offense committed in his presence
or within his view."). A driver commits a traffic violation if he turns his vehicle or
changes lanes without signaling his intent to turn. See Tex. Transp. Code Ann.
§ 545.104(a) (Vernon 1999). 

Analysis

 Here, appellant does not dispute that he failed to signal a lane change and a
turn in violation of the Transportation Code. Therefore, Officer Saucedo had
probable cause to arrest appellant and to search appellant's vehicle incident to the
arrest. See Dogay, 101 S.W.3d at 618. Because the arrest and search were lawful,
appellant has not shown that the motion to suppress was meritorious and would have
been granted. Therefore, appellant has failed to establish ineffective assistance of
counsel for failure to bring the pretrial motion. See Jackson, 973 S.W.2d at 957 (Tex.
Crim. App. 1998) (holding that defendant must prove motion to suppress would have
been granted to satisfy Strickland).

 We overrule appellant's sole issue.

Conclusion

 We affirm the judgment of the trial court.



 Sam Nuchia 

 Justice


Panel consists of Chief Justice Radack and Justices Nuchia and Higley.


Do not publish. See Tex. R. App. P. 47.2(b).